RECEIVED
BY MAIl

JUN 2 8 2023

CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

# BANKS EXHIBIT 1

SCANNED

JUN 2 8 2023

U.S. DISTRICT COURT ST. PAUL



*Rec 6-21-22*

June 15, 2022
Eugene Banks
1111 Highway 73
Moose Lake, MN 55767

RE:  Undelivered March 2022 Data Request to Dakota County Social Services Department

Mr. Banks,

I am the Dakota County Data Practices Compliance Official and am contacting you regarding a document Dakota County Social Services ("DCSS") received on May 19, 2022, which is titled Petition to Compel Compliance (the "Petition"). Exhibit 1 of the Petition is a letter addressed to DCSS Director Evan Henspeter and dated March 8, 2022, in which you request data on yourself contained in your case management, general assistance ("GA"), and medical assistance ("MA") files.

Evan Henspeter did not receive your March 2022 request, which is the reason no one responded. However, rather than require you to make a new request for data, I am responding to your request in Exhibit 1 for data that are maintained by two Dakota County departments: DCSS and Employment and Economic Assistance ("E&EA").

DCSS Data: DCSS does not have a record of providing you with case management services, and therefore there is no data responsive to your request for case management records. However, DCSS does maintain records sent from the MN Department of Human Services ("DHS") relating to your Minnesota Sex Offender Program ("MSOP") treatment. To the extent you are seeking case management records about your MSOP treatment, you may direct that request to DHS, as the custodian of those records. If you are requesting that DCSS provide you the copies of MSOP records that DHS sent, please let me know, and I will provide those to you.

E&EA Data: Enclosed are the data the E&EA Department maintains on you regarding GA.  The E&EA Department does not have any data responsive to your request for MA data. Dakota County is not the county of financial responsibility, so you may wish to direct any requests for financial records—such as GA, MA, or county cost-share—to your county of financial responsibility.

**County Administration**

P 651-438-4418  F 651-438-4405  W www.dakotacounty.us
A Dakota County Administration Center  •  1590 Highway 55  •  Hastings  •  MN 55033



If you would like to make future data requests to Dakota County, I have enclosed the Data Access Policy, which includes instructions on how to submit data requests on page 7.

Please contact me with any questions.

Sincerely,

Jerod Rauk
Data Practices Compliance Official
P: 651-438-4847
E: jerod.rauk@co.dakota.mn.us

**County Administration**

**P** 651-438-4418  **F** 651-438-4405  **W** www.dakotacounty.us
**A** Dakota County Administration Center  •  1590 Highway 55  •  Hastings  •  MN 55033

# BANKS EXHIBIT 2

| Payment # | Payment Type | Payment Status | Warrant / Eff Date | Amount | Service Vendor | Client Name | Service Start Date | Service End Date | COA CODE | CONTRACT NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|
| 301626537 | Payment Request | Draft | 10/20/2016 | $1,110.00 | DHS- MOOSE LAKE REG OPERATED SVCS | Lee, Michael A | 11/01/2016 | 11/30/2016 | 0431-224-0330-02 | C0000002 |
| 301626553 | Payment Request | Draft | 10/21/2016 | $1,110.00 | DHS- MOOSE LAKE REG OPERATED SVCS | Lonergran, Peter G | 11/01/2017 | 11/30/2016 | 0431-224-0330-03 | C0000002 |
| 301626194 | Payment Request | Draft | 10/22/2016 | $18,669.00 | DHS-ANOKA - METRO REGION TRT CTR | Markert, Timothy L | 11/01/2018 | 11/30/2016 | 0431-224-0330-04 | C0000002 |
| 301626569 | Payment Request | Draft | 10/23/2016 | $1,110.00 | DHS- Moose Lake Reg Operated SVCS | McClure, Donald L | 11/01/2019 | 11/30/2016 | 0431-224-0330-05 | C0000002 |
| 301626825 | Payment Request | Draft | 10/24/2016 | $7,440.00 | DHS- MOOSE LAKE REG OPERATED SVCS | Miles, Stephen R | 11/01/2020 | 11/30/2016 | 0431-224-0330-06 | C0000002 |
| 301626457 | Payment Request | Draft | 10/25/2016 | $1,110.00 | DHS- MOOSE LAKE REG OPERATED SVCS | Morrell, Daniel Dean | 11/01/2021 | 11/30/2016 | 0431-224-0330-07 | C0000002 |
| 301626585 | Payment Request | Draft | 10/26/2016 | $1,110.00 | DHS- MOOSE LAKE REG OPERATED SVCS | Nelson, George D Jr. | 11/01/2022 | 11/30/2016 | 0431-224-0330-08 | C0000002 |
| 301626601 | Payment Request | Draft | 10/27/2016 | $1,110.00 | DHS- MOOSE LAKE REG OPERATED SVCS | Person, Cameron McDonald | 11/01/2023 | 11/30/2016 | 0431-224-0330-09 | C0000002 |

Image

# BANKS EXHIBIT 3

| RULE | DATE EFFECTIVE | FACILITY/(license #) | WAIVER | EXPIRATION |
|---|---|---|---|---|
| | | | "Regulations for Tuberculosis Control in Minnesota Health Care Settings" - supersedes 4665.1200 | |
| 4665.1200 | 8/1/2013 | All SLF's | | Continuous |
| 4665.1000 | 5/25/2011 | Green Acres (27850) | Approval to maintain client admission and discharge records in a computerized system | Continuous |
| 4665.1800.11 | 5/27/2011 | Green Acres (27850) | Approval for fixed windows in bedrooms (extended to 15-bed expansion on 6/4/12.) (Extended on 30-bed expansion on 9/19/14 and six-bed expansion on 12/22/15.) | Continuous |
| 4665.1800.11 | 5/27/2011 | Green Acres (27850) | Approval for extra window sill height in bedrooms (extended to 15-bed expansion on 6/4/12.) (Extended to 30-bed expansion on 9/19/14.) | Continuous |
| 4664.4900 | 3/3/2016 | Green Acres (27850) | Approval for emergency procedures CBT in lieu of meetings | Continuous |
| 4665.1800.11 | 12/22/2015 | Green Acres (27850) | Approval for window height, operability in temp bedrooms 155/156 (8/25/16 - applied to make waiver continuous) | Continuous Temporary ends upon final clearance of Suite 15-bed expansion |
| 4665.1000 | 6/18/2017 | Green Acres (27850) | Approval to maintain client admission and discharge records in a computerized system | Continuous |
| 4665.4300 | 03/03/2016 | Moose Lake (01674) | Approval to maintain stock supply of prescription medications | Continuous |
| 4665.1800.11 | 11/22/2011 | Moose Lake (01674) | Approval for extra window sill height in Nova/Omega Unit | Continuous |
| 4665.1800.11 | 11/22/2011 | Moose Lake (01674) | Approval for fixed windows in Nova/Omega Unit | Continuous |
| 4664.1800.11 | 11/22/2011 | Moose Lake (01674) | Approval for window height in Nova/Omega Unit | Continuous |
| 4664.1800.11 | 11/22/2011 | Moose Lake (01674) | Approval for foam mattress in lieu of box springs | Continuous |
| 4665.1000 | 3/19/2010 | Moose Lake (01674) | Approval to maintain client admission and discharge records in a computerized system | Continuous |
| 4665.4100 | 4/17/2008 | Moose Lake (01674) | Approval to store medical records at off-site location | Continuous |
| 4665.1900 | 6/30/2006 | Moose Lake (01674) | Approval to provide foam mattress in lieu of springs/box springs (expanded to Main Building (2/20/2007), Building #1 (Complex 1) (8/7/2009) and Nova/Omega Unit (11/22/2011) | Continuous |
| 4665.1800.11 | 8/7/2009 | Moose Lake (01674) | Approval for window square footage (expanded to Building #1 (Complex 1) and Nova/Omega Unit (11/22/2011)). | Continuous |
| 4665.1800.4 | 8/7/2009 | Moose Lake (01674) | Approval for 2'8" (32 inch) bed separation in 2-bed room (Building #1 (Complex 1)) | Continuous |
| 4665.1800.4 | 8/7/2009 | Moose Lake (01674) | Approval for 117.50 sq. ft. bedroom usable floor space in multibedroom for non-ambulatory clients (Building #1 (Complex 1) only) | Continuous |
| 4665.1800.4 | 8/7/2009 | Moose Lake (01674) | Approval for 77.50 sq. ft. bedroom usable floor space in multibedroom for ambulatory clients (Building #1 (Complex 1) only) | Continuous |
| 4664.4900 | 3/3/2016 | Moose Lake (01674) | Approval for emergency procedures CBT in lieu of meetings | Continuous |
| 4664.4900 | 3/3/2016 | Pexton/Shantz (27851) | Approval for emergency procedures CBT in lieu of meetings | Continuous |
| 4665.4300 | 3/2/2016 | Pexton/Shantz (27851) | Approval for stock supplies of meds. | Continuous |

| | | | | |
|---|---|---|---|---|
| 4665.1000 | 5/27/2011 | Pexton/Shantz 2nd FL (27851) | Approval to maintain client admission and discharge records in a computerized system (requested extension to Shantz 1st Floor 12/5/11) | Continuous |
| 4665.0200.2 | 5/27/2011 | Pexton/Shantz 2nd FL (27851) | Approval for secure environment not residential/homelike (requested extension to Shantz 1st Floor 12/5/11) | Continuous |
| 4665.1800.11 | 5/27/2011 | Pexton/Shantz 2nd FL (27851) | Approval for extra window sill height in all bedrooms (requested extension to Shantz 1st Floor 12/5/11) | Continuous |
| 4665.1800.11 | 5/27/2011 | Pexton/Shantz 2nd FL (27851) | Approval for fixed windows in all client bedrooms (requested extension to Shantz 1st Floor 12/5/11) | Continuous |
| 4665.1900 | 5/27/2011 | Pexton/Shantz 2nd FL (27851) | Approval to provide foam mattress in lieu of springs/box springs (requested extension to Shantz 1st Floor 12/5/11) | Continuous |
| 4664.4900 | 3/2/2016 | Sunrise (30872) | Approval for emergency procedures CBT in lieu of meetings | Continuous |
| 4665.1800.11 | 10/22/2015 | Sunrise (30872) | Approval for extra window sill height in some bedrooms | Continuous |
| 4665.1800.11 | 10/22/2015 | Sunrise (30872) | Approval for fixed windows in bedrooms | Continuous |
| 4665.1800.11 | 10/22/2015 | Sunrise (30872) | Approval for less than five-foot corridor width | Continuous |
| 4665.1000 | 6/18/2017 | Sunrise (30872) | Approval to maintain client admission and discharge records in a computerized system | Continuous |

# VARIANCE to the RULE 26 LICENSE for the
## MINNESOTA SEX OFFENDER PROGRAM (MSOP)
February 1, 2014

- The Rule 26 requirements are listed in the *Rule Part* column. The text highlighted in gray identifies the requirement(s) for which the license holder requested a variance. Text that is not highlighted in gray is not affected by the variance.
- The license holder must comply with the licensing requirements in Rule 26 for which variances were not requested and must comply with the variance requirements in the right column as alternative equivalent measures to meet the intent of the rule requirement for which a variance is approved.

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| **9515.3000 DEFINITIONS.**<br>**Subpart 1. Scope**<br>As used in parts 9515.3000 to 9515.3110, the following terms have the meanings given them. | No variance requested. |
| **Subp. 2. Commissioner**<br>"Commissioner" means the commissioner of the Minnesota Department of Human Services or the commissioner's designated representative. | No variance requested. |
| **Subp. 3. Department**<br>"Department' means the Minnesota Department of Human Services. | No variance requested. |
| **Subp. 4. Minnesota Sexual Psychopathic Personality Treatment Center**<br>Minnesota Sexual Psychopathic Personality Treatment Center means the secure facility established at Moose Lake by Minnesota Statutes, section 246B.02 to provide care and treatment for:<br>A. Persons committed there by the courts as sexual psychopathic personalities or sexually dangerous person; or<br>B. Persons admitted there with the consent of the commissioner | **Variance #1 to Minnesota Rules, part 9515.3000, subpart 4.**<br><br>A. In accordance with Minnesota Statutes, section 246B, MSOP will admit only clients on a court-hold order, pending commitment, committed by the courts as sexual psychopathic personalities, or sexually dangerous persons to the MSOP program.<br><br>NOTE: As amended, Minnesota Statutes, 246B.02 no longer permits clients to be admitted solely based on the consent of the commissioner.<br><br>B. A license to each facility will be issued, but MSOP may operate as one program at two separate locations, provided the license holder operates under one set of policies and procedures and under one administration. |

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| | NOTE: This variance does not affect the requirements in Minnesota Statutes, chapter 245C, including those related to the person(s) designated to receive sensitive background study information and how set asides of disqualifications are managed. This includes but is not limited to the requirements in Minnesota Statutes, sections 245C.07 and 245C.14.<br><br>C. The name of the program will be that given in Minnesota Statutes, section 246B.02, Minnesota Sex Offender Program (MSOP). |

2

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| **Subp. 5. Person or person in treatment.**<br>"Person" or "person in treatment" means a person committed to the Minnesota Sexual Psychopathic Personality Treatment Center or admitted there with the consent of the commissioner as provided in Minnesota Statutes, section 246B.02. | No variance requested. |
| **Subp. 6. Sexually dangerous person.**<br>"Sexually dangerous person" has the meaning given in Minnesota Statutes, section 253B.02, subdivision 18b. | No variance requested. |
| **Subp. 7. Sexual psychopathic personality.**<br>"Sexual psychopathic personality" has the meaning given in Minnesota Statutes, section 253B.02, subdivision 18a. | No variance requested. |
| **Subp. 8. Treatment staff.**<br>"Treatment staff" means staff members of the Minnesota Sexual Psychopathic Personality Treatment Center who are responsible for arranging, evaluating, planning, coordinating, or providing the programming and services required in part 9515.3040, subpart 1. | No variance requested. |
| **Subp. 9. Treatment support staff.**<br>"Treatment support staff" means staff members of the Minnesota Sexual Psychopathic Personality Treatment Center whose primary responsibility is to maintain a secure and orderly environment supportive of treatment by performing such duties as escorting persons, observing persons' behavior, and directing group activities on the unit. | No variance requested. |
| **9515.3010 PURPOSE AND APPLICABILITY.**<br>Parts 9515.3000 to 9515.3110 apply only to residential treatment programs operated by the commissioner primarily for persons committed as sexual psychopathic personalities or as sexually dangerous or admitted with the commissioner's consent. The purpose of parts 9515.3000 to 9515.3110 is to govern the operation, maintenance, and licensure of these department-administered | **Variance #2 to Minnesota Rules, part 9515.3010.**<br>The same requirements set forth under variance #1 to Minnesota Rules, part 9515.3000, subpart 4, are required of the license holder to meet the variance to Minnesota Rules, part 9515.3010. |

4

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
| --- | --- |
| treatment programs. As of October 30, 1995, the Minnesota Sexual Psychopathic Personality Treatment Center at Moose Lake is the only such treatment program. | |

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIRMENTS |
|---|---|
| **9515.3020 PROGRAM ADMISSION CRITERIA.**<br><br>Except when admitted with the commissioner's consent as provided in Minnesota Statutes, section 246B.02, persons admitted to a treatment program licensed under parts 9515.3000 to 9515.3110 must meet one of the criteria in items A to C.<br><br>A. A court hold order is in effect under a petition for the person's commitment as a sexual psychopathic personality or sexually dangerous person.<br><br>B. A warrant of commitment has been issued for the person as a sexual psychopathic personality or sexually dangerous person pursuant to Minnesota Statutes, chapter 253B.<br><br>C. Final commitment action committing the person as a sexual psychopathic personality or sexually dangerous person has been taken under Minnesota Statutes, chapter 253B. | No variance requested. |
| **9515.3030 EVALUATION, ASSESSMENT, AND TREATMENT PLANNING.**<br><br>**Subpart 1. Multidisciplinary assessment.**<br><br>The license holder must assess each person entering the treatment program within ten days after admission to determine the person's need for medical care, ~~nursing services~~ psychological services, social services, chemical dependency treatment, education and vocational training, and recreation and leisure activities. After the initial assessment, the license holder must update assessments on all persons at least annually. | Variance #3 to Minnesota Rules, part 9515.3030, subpart 1.<br><br>A. Within ten (10) calendar days of the client's admission, treatment staff will conduct admission assessments to identify the client's needs in the following areas: medical care; mental health; chemical dependency; and educational, therapeutic recreation, and vocational services.<br><br>B.  Treatment staff will interview the client individually to complete the admission assessments.  The admission assessments will be completed in accordance with the license holder's policies and procedures and must include sufficient information to inform the client's individual treatment plan (ITP).<br><br>C.  All clients on the admissions unit, regardless of their commitment status, will be offered an opportunity to participate in sexual offender programming. For clients who are admitted on or after December 7, 2010, the opportunity to participate in sexual offender programming must be made within 14 calendar days of their admission.<br><br>D.  Clients under final commitment to the program under the Civil Commitment Act must be offered the opportunity to participate in a sexual |

5

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| | offender assessment within 14 days of their final commitment. The offer and the client's response must be documented in the client record. For purposes of this item, "final commitment" means an order by a district court committing the individual as SDP or SPP or both. |
| | E. The sexual offender assessment must include an interview with the client. The results of the assessment will be incorporated into the client's ITP within 14 days. The sexual offender assessment must be completed within 30 days from the date the assessment was initiated. |
| | F. For clients who elect to participate in a sexual offender assessment, it must be initiated within 14 days of the client's election to participate in the sexual offender assessment. |
| | G. Sexual offender programming that occurs on the admissions unit or prior to a sexual offender assessment shall include educational, therapeutic recreation, and vocational services and a minimum of one therapeutic group per week pertinent to sexual offender treatment. |
| | H. The clients' admission assessments shall be updated annually. Annually has the meaning given it in Minnesota Statutes, section 245A.02, subdivision 2b. For clients admitted prior to May 1, 2010, their last assessments shall be updated annually. Annually has the meaning given it in Minnesota Statutes, section 245A.02, subdivision 2b. The following assessments must be updated; medical care, if needed; mental health; and educational, therapeutic recreation, and vocational services. The update of the assessment means staff from the multidisciplinary team review the client's treatment progress. This review shall consider the client's reaction to treatment goals. The client's ITP is updated as appropriate based on feedback from the client and the multidisciplinary team about the client's treatment progress. The revisions to the ITP will consider feedback from the client and multidisciplinary team. |
| | I. For clients who have completed a sexual offender assessment and are participating in sexual offender treatment, the assessment must be updated as described in paragraph H of this section as part of the annual meeting and the results of the update must be incorporated into the treatment plan. |
| | J. The license holder must maintain a policy and procedure specific to the admission assessments (completed within 10 days of admissions) and the |

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| | assessment updates (completed annually). Annually has the meaning given it in Minnesota Statutes, section 245A.02, subdivision 2b. The policy and procedures and related tools must be dated and approved by the MSOP Executive Director, or designee. |

7

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIRMENTS |
|---|---|
| **Subp. 2. Psychiatric evaluation.**<br><br>A psychiatrist must evaluate each person within three working days after the person is admitted and reevaluate each person at least annually. | **Variance #4 to Minnesota Rules, part 9515.3030, subpart 2.**<br><br>A.  A licensed mental health professional, as defined in Minnesota Statute, section 245.462, subdivision 18, or license-eligible psychologist, must conduct an initial evaluation within three business days after the client's admission to determine whether the client has mental health needs.  The initial screening must also determine whether the client has been prescribed any psychotropic medications and whether the client has mental health needs.<br><br>B.  When the licensed mental health professional's or license-eligible psychologist's initial screening under paragraph A of this section indicates a that psychotropic medication may be indicated for the client, a referral must be immediately made to a physician, advance practice registered nurse, or physician's assistant, who must evaluate the client within six business days from the date of the referral.<br><br>C.  When a physician (who is not a psychiatrist) or an advance practice nurse (APRN) or a physician's assistant (PA) prescribes or monitors the client's use of psychotropic medications, a psychiatrist must review new, modified, and discontinued prescriptions for psychotropic medications.  The review must occur within 10 days of the order or the change to the order and be documented.  The documentation must be client specific.<br><br>NOTE: Psychotropic medication means a medication prescribed to treat mental illness and associated behaviors or to control or alter behavior.  The major classes of psychotropic medication are antipsychotic or neuroleptic, antidepressant, antianxiety, antimania, stimulant, and sedative or hypnotic.  Other miscellaneous classes of medication are considered to be psychotropic medication when they are specifically prescribed to treat a mental illness or to alter behavior based on a client's diagnosis.  See Minnesota Rules, part 2960.0020, subpart 59.<br><br>D.  Clients who are prescribed psychotropic medications must be seen by a psychiatrist at least every 12 months, including when the prescription was discontinued since the last annual visit.  The meeting must be face-to-face or may be conducted via telemedicine provided that it is a private, visual, real-time interaction between the psychiatrist and client.  If the client refuses to meet with the psychiatrist, the refusal and the reason for the refusal (if given) |

8

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIRMENTS |
|---|---|
| | must be documented in the client's record. |
| | E. The screening (under paragraph A of this section) must be documented in the client record and all mental health needs, including those related to psychotropic medications must be integrated into the client's ITP. |
| | F. The license holder must maintain a policy and procedure that includes the screening tool to be used to conduct the initial screening. The policy and procedures and related tools must be dated and approved by the MSOP Executive Director, or designee. |
| | G. For clients who are prescribed psychotropic medications, a note in the client's chart will meet the requirement for the annual reevaluation provided the following criteria are met. The chart note must be: |
| |    1. Completed within 180 days prior to the date of the client's annual meeting; |
| |    2. Specific to the client's mental health needs or status; |
| |    3. Prepared and signed by a physician, advance practice registered nurse, or physician's assistant who is privileged to prescribe psychotropic medications for the purpose of medication management. |
| | H. For clients who are not receiving on-going mental health services and who are not prescribed psychotropic medications a licensed mental health professional, as defined in Minnesota Statute, section 245.462, subdivision 18, or license-eligible psychologist, must conduct an evaluation prior to the client's annual review meeting to determine whether the client has mental health needs, including needs that indicate the need for a referral to determine whether psychotropic medications may be indicated. This evaluation must be competed using the tool identified in paragraph A of this section and the evaluation must be documented in the client record, including all mental health needs and any mental health referrals. Needs of the client related to psychotropic medications must be integrated into the client's ITP. |

9

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| **Subp. 3. Follow-up to psychiatric evaluation.**<br><br>Specific mental health interventions indicated in addition to the usual sex offender treatment program must be prescribed and monitored by a psychiatrist. These interventions must be integrated into the treatment plan. | Variance #5 to Minnesota Rules, part 9515.3030, subpart 3.<br><br>A. Clients will be referred to a psychiatrist, or an individual who meets the requirements in variance number 4, paragraph C (variance to Minnesota Rules, part 9515.3030, subpart 2), namely, a physician, advance practice registered nurse, or physician's assistant when the:<br><br>1. Initial screening by a licensed mental health professional, as defined in Minnesota Statutes, section 245.462, subdivision 18, or license-eligible psychologist, indicates that psychotropic medication may be indicated for the client; and,<br><br>2. Annual screening, prior to the client's annual review meeting, by a licensed mental health professional, as defined in Minnesota Statutes, section 245.462, subdivision 18, or license-eligible psychologist, indicates a that psychotropic medication may be indicated for the client.<br><br>B. When a client requests psychotropic medication or to be seen by a psychiatrist, an individual who meets the requirements in variance number 4, paragraph C (variance to Minnesota Rules, part 9515.3030, subpart 2), namely, a physician, advance practice registered nurse, or a physician's assistant, or a licensed mental health professional (as defined in Minnesota Statute, section 245.462, subdivision 18), must meet with the client. As appropriate, the a physician, advance practice registered nurse, physician's assistant, licensed mental health professional, or license-eligible psychologist, will take steps to address the client's needs. In cases where the client, continues to request to see a psychiatrist, the physician, advance practice nurse, physician's assistant, or licensed medial health professional, will document the meeting with the client, and forward the necessary information to the psychiatrist. The psychiatrist will evaluate and determine whether it is appropriate for the client to be seen by a psychiatrist.<br><br>C. When clients file grievances concerning the prescribing practices related to psychotropic medications, the review and response to the grievance will be conducted in accordance with Minnesota Statutes, section 245A.04, subdivision1, paragraph (d), and must include consultation with a psychiatrist.<br>D. Clients who are prescribed psychotropic medications shall have the option to receive psychotropic medication management from an individual who meets |

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| | the requirements in variance number 4, paragraph C (variance to Minnesota Rules, part 9515.3030, subpart 2), namely, a physician, advance practice registered nurse, or physician's assistant.<br><br>E. The license holder must assure that arrangements are made for the client to receive medication management services in a reasonable time frame. The license holder must assist the client as needed to assure that any follow-up appointments are arranged.<br><br>F. All mental health needs, including those related to psychotropic medications must be addressed in the client's ITP. |

11

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| **Subp. 4. Individual treatment planning.**<br><br>Within 14 days after a person is admitted, a multidisciplinary team led by the program director or program director's designee must develop and begin implementing a written treatment plan for the person. Based on the assessments and evaluation in subparts 1 and 2, the plan must identify the person's needs; determine the phase of treatment where it is most appropriate for the person to begin treatment; establish goals; assign staffing responsibility; and provide for at least quarterly review. At a minimum, the team must include the person, a psychologist, a social worker, a nurse, and a member of the treatment support staff. When psychiatric or medical treatment is required, a physician must also be included on the team.<br><br>The case manager assigned by the county responsible for providing the person's social services must be notified of and given the opportunity to participate in all team meetings. Treatment staff who provide services identified in the treatment plan must also receive notice of team meetings and be given the opportunity to participate. | **Variance #6 to Minnesota Rules, part 9515.3030, subpart 4.**<br><br>A.  For purposes of this variance, the program director means the executive clinical director or clinical director referenced throughout the variance.<br><br>B.  The multidisciplinary team will be led by the primary therapist assigned to the client.<br><br>C.  Within fourteen (14) calendar days of admission, the multidisciplinary team must develop a written ITP that addresses the needs identified through the admission assessments required in part 9515.3030, subpart 1.  At a minimum, this must include any needs related to: medical care; mental health; chemical dependency; and educational, therapeutic recreation, and vocational services.<br><br>D.  At a minimum, the multidisciplinary team must include the primary therapist, a licensed mental health professional as defined in Minnesota Statute, sections 245.462, subdivision 18, or license-eligible psychologist, a registered nurse, as appropriate, and a member of the treatment support staff. When medications or medical treatment is prescribed, a physician, advance practice registered nurse, or physician's assistant must also provide input. The case manager, if assigned by the county, must be provided the opportunity to provide input to the multidisciplinary team.  The client may provide input to the multidisciplinary team through the client's primary therapist.<br><br>E.  It must be documented in the client's individual file who was invited to participate in the client's treatment planning and who participated.<br><br>F.  Development of the initial ITP (within 14 days of admission) must include goals and interventions that are based on the admission assessments and the input from the multidisciplinary team concerning their admission assessments of the client in accordance with variance #3 of Minnesota Rules, part 9515.3030, subpart I.  The ITP must also assign staff responsibilities related to implementation.<br><br>G.  For clients who elect to participate in sexual offender assessment and are under final commitment, the ITP will be updated in accordance with variance #3 to Minnesota Rules, part 9515.3030, subpart I, paragraphs H and I. |

12

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIRMENTS |
|---|---|
| | H. The client must be provided a copy of the ITP within 30 days of admission (and any time it is revised). |
| | I. The client's treatment goals in the ITP must be reviewed quarterly and the client's progress toward reaching the goals identified for the previous quarter must be documented in the client's record. |
| | Quarterly is defined as within 90 calendar days of the previous multidisciplinary team meeting or previous quarterly review whichever is later. For people admitted to the program on or after May 1, 2010, the first quarterly review must be completed within 104 calendar days from the date of admission (i.e., within 90 calendar days of development of the initial ITP which must be completed within 14 calendar days of admission). |
| | For people admitted prior to May 1, 2010, the date that establishes the quarterly review cycle shall be the date of the client's last quarterly review or annual multidisciplinary meeting that occurs on or after February 1, 2010. |
| | J. At a minimum, the multidisciplinary team review completed quarterly must include input from a licensed mental health professional as defined in Minnesota Statute, sections 245.462, subdivision 18, or license-eligible psychologist, a registered nurse, as needed, and a member of the treatment support staff. The primary therapist coordinates the quarterly review and gathers the input needed (including reviewing documentation from all shifts by staff who are not members of the treatment team, but who have contact with the client on the living unit) to review the treatment goals in the ITP and update the ITP based on the input. When medications or medical treatment is prescribed, a physician, advance practice registered nurse, or physician's assistant must be provided the opportunity to provide input into the review. |
| | NOTE: Input means that members of the multidisciplinary team shall provide status updates, concerning their assigned responsibilities as related to the client's ITP, to the primary therapist prior to the client's quarterly review. |
| | K. As part of the therapeutic process, clients discuss their perception of their progress related to the quarterly review during groups with peers and their primary therapist. The client's input is documented by the primary therapist in |

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| | the group notes. Clients will be provided a copy of their quarterly progress report. If the client's ITP is updated or revised the client shall be given a copy of their revised ITP within 30 days. Clients will also be given a copy of their ITP within 30 days of their annual progress review meeting.

L. Annually a meeting will be held with the multidisciplinary team and the client. Annually has the meaning given it in Minnesota Statutes, section 245.A.02, subdivision 2b. The meeting shall be coordinated by the primary therapist. At a minimum, the multidisciplinary team must include a licensed mental health professional as defined in Minnesota Statute, sections 245.462, subdivision 18, or license-eligible psychologist, a nurse, and a member of the treatment support staff. The nurse will represent issues related to medical treatment and medications. The meeting must provide the opportunity for all members of the multidisciplinary team to be present at the same time and be able to interact with the team.

M. The annual meeting shall provide an opportunity for the members of the multidisciplinary team to provide status updates concerning their assigned responsibilities in the ITP. The primary therapist must gather input from staff working on the client's living unit, but who are not members of the multidisciplinary team. This input must include all shifts. The input of these staff must be summarized by the primary therapist at the annual meeting. Based on the information from the annual meeting and with input from the client, the ITP shall be revised.

N. The revised ITP must identify the client's needs, treatment goals, interventions, and assigned staff's responsibility. The client shall receive a copy of the revised ITP within 30 days of the meeting and shall receive an annual treatment progress report.

O. Clients must be provided the opportunity to participate in the annual meeting. It must be documented in the client record if the client elects not to participate in the meeting.

P. The client's county case manager must be notified in writing and given an opportunity to participate in or provide input to the quarterly reviews and annual meetings. A copy of the notification must be placed in the client's individual record. |

14

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIRMENTS |
|---|---|
| | Q. A list of the people who participated in each quarterly review and annual meeting and their title or for individuals who are not MSOP staff their relationship to the client must be documented in the client's record. |

15

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| **9515.3040 TREATMENT PROGRAM SERVICES.**<br><br>**Subpart 1. Scope of treatment program services.**<br>At a minimum, a license holder's program services and resources must include:<br><br>A. specific programs that addresses sex offense behaviors and remediation, and include, as applicable related topics such as deviant sexual arousal patterns, assaultive behavior, human sexuality, victimization issues, reoffense prevention, and interpersonal relationships;<br><br>B. psychiatric, medical, dental, psychological, social, and advocacy services;<br><br>C. educational programming;<br><br>D. assessment and treatment of chemical dependency<br><br>E. vocational rehabilitation services; and<br><br>F. leisure and recreational activities.<br><br>The license holder must offer treatment in a form and structure consistent with a person's capacity to participate productively. | **Variance  #7 to Minnesota Rules, part 9515.3040, subpart 1, items A and D.**<br><br>A.  The primary therapist assigned to the client is responsible to assure that the treatment program services are coordinated, provided, and accurately reflected in the ITP.<br><br>B.  For purpose of item A of Minnesota Rules, part 9515.3040, subpart 1, "specific programs that address sex offense behaviors and remediation" is replaced with "sexual offender specific treatment." Sexual offender specific treatment means a comprehensive and integrated set of planned and organized therapeutic experiences and interventions that are intended to improve the prognosis, function, and/or outcome of clients to reduce the risk of sexual reoffense, or other sexually abusive and/or other aggressive behavior by assisting them to adjust to and deal more effectively with their life situations as defined in variance #3 to Minnesota Rules, part 9515.3030, subpart 1, items D, E, and F.<br><br>C.   As required in variance #3 to Minnesota Rules, part 9515.3030, subpart 1, item A, treatment staff must conduct an assessment of the client's needs related to chemical dependency within 10 days of admission.  For purpose of paragraph D, in Minnesota Rules, part 9515.3040, subpart 1, prior to being transitioned to community preparation services, the client must again be assessed for the need for chemical dependency treatment.  If the assessment indicates the client is in need of chemical dependency treatment, the ITP must be amended and the client must be offered chemical dependency treatment. The license holder must provide or arrange for the provision of the chemical dependency treatment. |
| **Subp. 2. Treatment-related policies and procedures.**<br>A license holder must develop and follow written policies and procedures that specify how the license holder will fulfill the responsibilities in items A to G.<br><br>A. Meet data privacy laws and professional confidentiality standards, especially regarding the use and results of physiological examinations and the reporting of previously undetected criminal behavior which is | No variance requested.<br><br>Clarification:  The license holder must have a grievance process that meets the requirements of Minnesota Statutes, section 245A.04, subdivision 1, paragraph (d).  The process must include a provision for appeal and review by the executive director. |

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| disclosed by a person while in the program. | |
| B. Evaluate individual treatment outcomes and program outcomes, including indicators to be used and processes for program improvement. | |
| C. Prevent abuse and predation among program participants. | |
| D. Provide gender-specific treatment where appropriate. | |
| E. Respond to allegations of criminal acts committed by a person while in the program. | |
| F. Monitor for contraband. | |
| G. Provide a safe environment for staff, program participants, and visitors. | |
| **9515.3050 STAFFING REQUIREMENTS.** | No variance requested. |
| **Subpart 1. Program director.**<br>Each licensed facility must have at least one full-time program director who meets the requirements in part 9515.3060. | |
| **Subp. 2. Number of staff; staffing patterns.**<br>The license holder must provide qualified treatment and treatment support staff in numbers sufficient to meet the license holder's responsibilities for evaluation and assessment, developing and implementing individualized treatment plans, providing a secure and orderly environment, and planning for discharge. The number and type of staff needed on a given unit at a given time are to be determined by the needs and characteristics of the persons on the unit in accordance with the ongoing staffing assessment required in subpart 3. | No variance requested. |
| **Subp. 3. Ongoing assessment and determination of necessary staffing levels.**<br>Staffing levels shall be assessed and determined as specified in items A to G. | Variance #8 to Minnesota Rules, part 9515.3050, subpart 3, item B.<br><br>A. The assessment performed by the license holder to determine the appropriateness of staffing levels at a minimum must include the following factors: |

17

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| A. The license holder must perform assessments to determine the staffing levels necessary to meet the safety and treatment needs of program participants and the safety needs of staff. The assessments must address staffing levels for both treatment and treatment support staff functions.<br><br>B. The assessments must be based on factors that include but are not limited to the treatment needs of and individual program participants, participants' tendencies to victimize others, participants' vulnerability to being victimized, the unit's population mix, and the influence of new admissions.<br><br>C. The license holder must develop a written plan that identifies specific participant characteristics related to resource utilization and specifies methods for evaluating the effectiveness and adequacy of staffing levels necessary to provide active treatment, support order, and provide safety and security to staff and participants.<br><br>D. Assessments must be completed as often as necessary but no less than quarterly.<br><br>E. A team representing different staffing needs within the facility must complete the assessments and report the resulting data to the facility administration.<br><br>F. The administration must review and consider the reported data as part of the continuing process of monitoring established staffing levels and reestablishing staffing levels as necessary. The administration must document when staffing changes are made due to assessment data.<br><br>G. The license holder must develop policies and procedures for implementing the requirements of this subpart.<br><br>**9515.3060 STAFF QUALIFICATIONS.**<br><br>**Subpart 1. Program director.**<br><br>The program director must have at least one year of work experience or training in administration or supervision, plus:<br><br>A. at least a master's degree in the behavioral sciences or related field | • The needs of the clients served.<br>• Overall number of clients served, including allowances for program growth.<br>• Overall staffing levels in clinical, security, and reintegration.<br>• Number of clients who are participating in sexual offender treatment.<br><br>B. The written plan required of the license holder may be included in the policies and procedures, provided the plan otherwise meets the requirements of this subpart.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>No variance requested. |

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| plus at least two years of work experience providing services to sex offenders or to persons with behavioral disorders, developmental disabilities, mental illness, or chemical dependency; or | |
| B. a bachelor's degree in the behavioral sciences or related field from an accredited college or university plus a minimum of four years of work experience providing services to sex offenders or to persons with behavioral disorders, developmental disabilities, mental illness, or chemical dependency. | |
| **Subp. 2. Treatment staff and treatment support staff qualifications.** | No variance requested. |
| A. Treatment staff members and consultants whose duties require them to be licensed, certified, or registered by the state of Minnesota must have a copy of their current license, certification, or registration in their personnel files. | |
| B. Treatment staff members who provide assessments and individual and group counseling services must be qualified in at least one of the following ways: | |
| (1) have a bachelor's degree in one of the behavioral sciences or related fields from an accredited college or university and at least 2,000 hours of supervised experience providing services to sex offenders or to persons with behavioral disorders, developmental disabilities, mental illness, or chemical dependency; | |
| (2) have at least 6,000 hours of supervised experience in providing services to sex offenders or to persons with behavioral disorders, developmental disabilities, mental illness, or chemical dependency; | |
| (3) be a graduate student in one of the behavioral sciences or related fields and be formally assigned by an accredited college or university to the facility for clinical training under the supervision of a qualified treatment staff member or consultant; or | |
| (4) hold a master's or other graduate degree from an accredited college or university in one of the behavioral sciences or related fields. | |

19

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIRMENTS |
|---|---|
| C. A treatment staff member who provides services and programming to implement participant treatment plan objectives such as completing educational and vocational goals, identifying appropriate recreation and leisure activities, and developing social relationships with peers must, at a minimum: | |
| (1) have completed at least two years of post-secondary education at an accredited college or university with a minimum of 18 quarter hours or 12 semester hours in the behavioral sciences, social work, or nursing; or | |
| (2) have been employed at least 2,000 hours providing direct services to: sex offenders or to persons with behavioral disorders, mental illness, developmental disabilities, or chemical dependency. | |
| D. Treatment support staff must be at least 18 years old and have a high school diploma or a general education degree (GED). | |
| **9515.3070 STAFF ORIENTATION AND DEVELOPMENT.** | No variance requested. |
| **Subpart 1. Initial staff orientation and training.** | |
| The license holder is responsible for ensuring that every staff member successfully completes the orientation training specified in items A and B. | |
| A. Before providing direct care or having any other direct contact with persons in treatment, a staff member must: | |
| (1) complete an overview of the treatment program philosophy and design; | |
| (2) demonstrate mastery of techniques used to manage behavioral emergencies, including preventive de-escalation techniques and physical and nonphysical intervention techniques to interrupt violent behavior; | |
| (3) be knowledgeable about the rights of persons in treatment under applicable laws such as Minnesota Statutes, sections 144.651 (the Patient Bill of Rights) and 626.557 (the Reporting of Maltreatment of Vulnerable Adults Act), and about program policies ensuring these | |

20

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIRMENTS |
|---|---|
| rights; | |
| (4) understand how the general need to establish and maintain boundaries in a therapeutic relationship applies in the specific context of working with sexual psychopathic personalities and other sex offenders; and | |
| (5) review the program's emergency provisions on fire, weather, missing persons, serious injury, and death. | |
| B. Within the first 30 calendar days of employment, all staff members must complete introductory training in: | |
| (1) human sexuality and specific issues raised by the program population; | |
| (2) awareness of the influences of culture and the importance of cultural differences; | |
| (3) control of infection and infectious diseases; and | |
| (4) assessment and individual treatment planning. | |
| **Subp. 2. Ongoing individual staff development and evaluation plan.** | **Variance #9 to Minnesota Rules, part 9515.3070, subpart 2, item A.** |
| The license holder must ensure that an individual staff development and evaluation plan is developed and implemented for all staff who provide, supervise, or administer direct services. The plan must: | A.  The license holder must maintain an overall staff development and evaluation plan for all staff employed by MSOP.  The plan must be documented and must address the specific age, cultural, and mental health needs of the clients being served. The staff development plan must be reviewed and revised annually. |
| A. be developed ~~within 90 days of employment and be reviewed and revised at least annually~~; | |
| B. meet the staff development needs specified in the staff member's annual employee evaluation; and | B.  A performance review of each staff person must be conducted annually and must include an evaluation of the training completed by the individual staff person in the last 12 months and must identify the future training needs of that staff person. |
| C. address the specific age, cultural, and mental health needs of the persons being served. | C.  Documentation of training completed by staff must be maintained. |
| **Subp. 3. Amount of annual training.** | No variance requested. |

21

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIRMENTS |
|---|---|
| The license holder must ensure that all staff receive the amount of training specified in this subpart.<br><br>A. Except as provided in items B and C, all staff must receive at least 16 hours of training annually.<br><br>B. Staff who work more than half time and have less than 4,000 hours of experience providing services to sex offenders or to persons with behavioral disorders, developmental disabilities, mental illness, or chemical dependency must receive at least 24 hours of training annually.<br><br>C. Treatment staff members and consultants whose duties require them to be licensed, certified, or registered by the state of Minnesota are exempt from the requirements in items A and B as long as they meet the training requirements necessary to remain current in their licensure, certification, or registration.<br><br>The orientation required in subpart 1 may be counted toward the annual training requirement in an employee's first year of service. | |

22

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIRMENTS |
|---|---|
| **Subp. 4. Content of training.**<br><br>The license holder must ensure that at least 75 percent of the required training hours is focused on one or more of the following areas or subjects:<br><br>A. use of preventive de-escalation techniques and physical and nonphysical intervention to interrupt violent behavior;<br><br>B. application and compliance with Minnesota Statutes and rules related to treatment and services for sex offenders;<br><br>C. assessment and treatment of persons with special needs related to conditions such as substance abuse, obsessive compulsive disorder, organic brain damage, impulse control disorders, or other physical needs;<br><br>D. prevention and control of infectious diseases, including human immunodeficiency virus (HIV) infection;<br><br>E. how to administer first aid and cardiopulmonary resuscitation (CPR); and<br><br>F. review of research, practice, or regulations that affect care and treatment programs for sex offenders. | No variance requested. |
| **9515.3080 PROGRAM SAFETY AND RULES FOR BEHAVIOR.**<br><br>**Subpart 1. Program safety.**<br><br>The license holder must develop and follow policies and procedures for maintaining a secure and orderly environment that is safe for persons in treatment and staff and supportive of the treatment program. | No variance requested. |
| **Subp. 2. Written rules for behavior and consequences of violations.**<br><br>The license holder must specify rules of behavior for persons in treatment that are consistent with maintaining program safety and supportive of the person's rights to treatment. The rules must be in writing and must include a range of consequences that may be imposed for violation of the rules. The license holder must review and | No variance requested. |

23

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIRMENTS |
|---|---|
| approve the written rules and range of consequences at least annually. The license holder must give each person in treatment a copy of the rules and consequences in a handbook or comparable format at the time of admission. If a person is unable to understand the written rules and consequences, the license holder must make the rules and consequences available in a form that the person can understand.<br><br>The license holder must also give each staff member a copy of the written rules and consequences and ensure that the contents are discussed in the orientation required by part 9515.3070. | |

24

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIRMENTS |
|---|---|
| **Subp. 3. Criteria for written rules.**<br><br>The written rules and consequences in subpart 2 must:<br><br>A. regulate only behavior that endangers persons in treatment or others or threatens the license holder's ability to maintain the order and safety of the treatment program; and<br><br>B. be clearly and objectively stated in terms of observable behavior. | No variance requested. |

25

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| **9515.3090 BEHAVIOR MANAGEMENT AND PROGRAM SAFETY.**<br><br>**Subpart 1. Behavior management.**<br>Disciplinary restrictions, emergency seclusion, and protective isolation may be imposed in accordance with this part when necessary to ensure a safe, secure, and orderly environment for the treatment program. For purposes of this part, disciplinary restrictions, emergency seclusion, and protective isolation have the meanings in subparts 2 to 4. | No variance requested.<br><br>Clarifications<br><br>A. Clients may only be placed or remain in a room from which they are not able or permitted to exit when:<br><br>1. The placement meets the requirements of administrative restriction (under Minnesota Statutes, chapter 253B);<br>2. The placement meets the requirements of emergency seclusion (under Minnesota Rules, parts 9515.3090, under subpart 3);<br>3. The placement meets the requirements of protective isolation (under Minnesota Rules, parts 9515.3090, under subpart 4);<br>4. The requirements for administrative restriction, emergency seclusion, or protective isolation (in accordance with the rules cited above) are no longer met, but the client refuses to leave the high security area;<br>5. The placement occurs in the client's sleeping room during normal sleeping hours; or,<br>6. The placement meets the conditions for and follows the license holder's policies and procedures for maintaining a secure, orderly, and safe environment related to the following list of circumstances.<br><br>   a) Fire<br>   b) Adverse weather<br>   c) Medical emergency response<br>   d) Terrorist actions/bomb threat<br>   e) Escape/missing client<br>   f) Hostage situation<br>   g) Interim life safety (special operations during shutdown of a life safety/alarm system for servicing)<br>   h) Riot/disturbance<br>   i) Adverse job action/employee strike<br>   j) Pandemic<br>   k) Any other emergency response plan deemed necessary to maintain safe and secure operations.<br><br>B. The license holder's use of behavior management and program safety interventions must comply with all applicable regulations regardless of the label given the intervention by the license holder. |

26

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| | C. The Licensing Division will evaluate the license holder's compliance with all policies and procedures that apply to the program, including those related to administrative restriction under Minnesota Rules, part 9515.3040, subpart 2, item E. |

27

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIRMENTS |
|---|---|
| **Subp. 2. Disciplinary restrictions.**<br><br>"Disciplinary restrictions" means withholding or limiting privileges otherwise available to a person in treatment as a consequence of the person's violating rules of behavior. Examples of disciplinary restrictions would include withholding or limiting such privileges as work, leisure, vocational and recreational activities, or access to parts of the facility. Disciplinary restrictions must:<br><br>A. be in proportion to the rule's importance to the order, safety, and security of the treatment program and to the severity of the violation;<br><br>B. be reasonably related to the nature of the behavior; and<br><br>C. take into consideration the person's past behavior while in the program. | No variance requested. |
| **Subp. 3. Emergency seclusion.**<br><br>"Emergency seclusion" means an emergency intervention that physically separates the person in treatment from others, including placing the person in a room from which the person is not able or permitted to exit. Emergency seclusion does not include locking a person in the person's sleeping room during normal sleeping hours or limiting a person's access to parts of the facility to which the person would otherwise have access. Emergency seclusion must be:<br><br>A. imposed only when necessary to protect the person being secluded or another person or individual from imminent danger of serious physical harm or to prevent serious property damage;<br><br>B. authorized by the nurse on duty who must immediately contact a physician for an order; and<br><br>C. continued only as long as the person's behavior indicates imminent danger continues.<br><br>Staff must monitor the person in emergency seclusion not less than every 15 minutes. A physician must review the situation at least every 24 hours. | **Variance #10** to Minnesota Rules, part 9515.3090, subpart 3, including items B and C.<br><br>A. Observation status is used when it is determined that a client whose clinical or medical status requires additional supervision, observation, or restricted access to items the client could use to harm him- or her- self.   Observation status may include physically separating the client from others.   When the separation occurs in a room from which the client is not able or permitted to exit, it is considered seclusion and subject to the requirements of Minnesota Rules, part 9515.3090, subpart 3.   Clients placed in seclusion shall be moved to the high security area of the facility.<br><br>B.   Prior to placing a client in seclusion, it must be determined that this level of intervention is necessary due to the client being in imminent danger of serious physical harm to him- or her-self.   Seclusion may occur over normal sleeping hours and may limit the client's access to the facility.<br><br>C.   During regular business hours, the use of seclusion shall only be authorized by a medical practitioner, licensed psychologist, license-eligible psychologist, or clinical director of the program who meets with the client to determine what level of observation is required, if any.   During non-business hours, including weekends, holidays, evenings and sleeping hours, the use of seclusion shall be |

28

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| | authorized by a licensed health services staff whom conducts an assessment of the client and consults with the medical practitioner who is on-call.

D. Staff must check the client in seclusion in person at least every 15 minutes or continuously monitor the client. The level of monitoring that is required to assure the client's safety is determined by the medical practitioner, licensed psychologist, license-eligible psychologist, or clinical director.

E. After the first 24-hour period of the client being placed in seclusion, the clinical director, a licensed psychologist, license-eligible psychologist, or a medical practitioner must reassess the client's need for seclusion and may renew or terminate the use of seclusion. The action must be documented in the client's file. If the 24 hour period occurs on a weekend, holiday, or during the evening or overnight shift the medical practitioner who is on-call shall review the placement and determine whether to renew or terminate the use of seclusion. This action must be documented in the client's file.

F. Staff must document in the client record the use of seclusion, the reason it was implemented, who authorized it, and each review including the name of the treatment staff member who assessed whether it was necessary to continue or terminate.

G. MSOP must have a policy and procedure to address situations in which the license holder has determined that emergency seclusion is to be discontinued and the client refuses to leave the high security area. The policy and procedures must include what steps the license holder will take to transition the client from the high security area. |

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIRMENTS |
|---|---|
| **Subp. 4. Protective isolation.** | **Variance #11 to Minnesota Rules, part 9515.3090, subpart 4, item C.** |
| "Protective isolation" means placing a person in treatment in a room from which the person is not able or permitted to exit as a way of defusing or containing dangerous behavior that is uncontrollable by any other means. | A.  Protective isolation (PI) status means placing a client in a room from which the client is not able or permitted to exit, as a way of defusing or containing dangerous behavior that is uncontrollable by any other means.  At the facility in Moose Lake, this may only occur in the high security area unless there is a specific documented need for PI to occur outside of the high security area.  Clients who are placed in on protective isolation shall not be secured in a room where any other client resides. |
| The license holder must have written policies on protective isolation that cover the points in items A to C. | |
| A.  Protective isolation must not be used for the convenience of staff or as a substitute for programming. | NOTE:  MSOP's policy defines dangerous behavior as "behavior that compromises the safety or security of the treatment program, or disrupts the order of the program to the extent that safety or security may be jeopardized." |
| B.  Treatment must be available during protective isolation to the extent that the person's behavior and condition make treatment possible; treatment shall include components designed to eliminate or reduce the specified behavior or behaviors that caused the need for protective isolation. | B.  The following three conditions must be met before protective isolation is used:<br><br>1.  The client is exhibiting dangerous behavior that is uncontrollable by any other means, this includes but is not limited to compromising the safety or security of the program;<br>2.  The use of protective isolation is not for the convenience of staff;<br>3.  The use of protective isolation is not used as a substitute for programming. |
| C.  Protective isolation must not go beyond 48 continuous hours unless the treatment team recommends continuation to the medical director in a statement that: | C.  Immediately following a client being placed on protective isolation status, the Officer of the Day must be notified.  The Officer of the Day must assess whether the criteria identified in Minnesota Rules, part 9515.3090, subpart 4 (i.e. paragraph B of this section, conditions 1 through 3) were met based on the information that is available.  If they were not met, the client must be released from protective isolation status immediately.  Within four hours of a client being placed on protective isolation status, the Officer of the Day must review the initial decision based on any additional information that has become available to evaluate whether the criteria defined in Minnesota Rules, part 9515.3090, subpart 4 (i.e. paragraph B of this section, conditions 1 through 3) are met based on the competed documentation of all staff, including all related incident reports.  If the criteria are not met, the client must be released from protective isolation status immediately. |
| (1) explains why continued protective isolation is necessary; | |
| (2) contains an objective description of the behavior which poses the danger; | |
| (3) describes the frequency with which the behavior has occurred in the past; | |
| (4) analyzes the causes or precipitating condition for the behavior including, where appropriate, an analysis of the needs of the person which may cause the behavior; | |
| (5) discusses why protective isolation is necessary, including a statement of the facts and data from which it is concluded that less restrictive programming will not be sufficient to prevent harm; | |
| (6) describes the treatment plan, if any, which will be offered during | |

30

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| the period of protective isolation;<br><br>(7) sets forth a plan for reviewing the protective isolation, including the frequency of reviews and the criteria for determining that the risk of harm is no longer sufficient to justify isolation; and<br><br>(8) is placed in the medical records of the person in protective isolation.<br><br>~~Continuing protective isolation is contingent on the medical director's written approval of the recommendation. If the plan for continuing protective isolation is approved, staff must follow the plan required in subitem (7).~~ | D. The client must be monitored every 15 minutes or at a frequency established by the Officer of the Day. If the Officer of the Day establishes a frequency of monitoring that is more or less than 15 minutes, it must be documented. Each occurrence of monitoring of the client by staff must be documented.<br><br>E. The Officer of the Day must assure the documentation identifying why the protective isolation was initiated and what less restrictive means were attempted to manage the behavior is complete.<br><br>F. At 24 hours of a client being placed in protective isolation and within every 24 hours thereafter (until the client is discharged from protective isolation), the Officer of the Day must assess whether the criteria defined in Minnesota Rules, part 9515.3090, subpart 4 (i.e., paragraph B of this section, conditions 1 through 3), were met based on the completed documentation of staff, including all related incident reports. If the criteria are not met, the client must be released from protective isolation immediately. The Officer of the Day must document this assessment was completed.<br><br>G. The assessment that occurs every 24 hours must also evaluate whether the client is being provided programming designed to eliminate or reduce the specified behavior or behaviors that caused the need for protective isolation. The license holder is responsible to assure that this programming is provided.<br><br>H. In order for protective isolation to continue beyond 48 hours, the treatment team must recommend its continuation. In cases where the treatment team recommends continuation of protective isolation, the recommendation must be in writing and meet the requirements of Minnesota Rules, part 9515.3090, subpart 4, paragraph C, items (1) through (8). In cases where the treatment team recommends that protective isolation be discontinued, but the client refuses to leave protective isolation, the staff must document every 48 hour period what attempts were made to have the client leave protective isolation. Every 48 hours this documentation must be reviewed by the Medical Director or his or her designee.<br><br>NOTE: If a client no longer meets the conditions to remain in protective isolation status, but refuses to leave the high security area, the client's ITP must include steps to transition the client from the high security area. |

31

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| | I. In lieu of the Medical Director, MSOP may designate staff to evaluate whether the recommendation for continuing the use of protective isolation beyond 48 hours may be approved.  The evaluation must consider all of the information and data required under Minnesota Rules, part 9515.3090, subpart 4, paragraph C, items (1) through (8).  When the review is conducted by a designee of the Medical Director, the designee must assess and document whether the use of the protective isolation complies with Minnesota Rules, part 9515.3090, subpart 4,  including conditions 1 through 3 in paragraph B of this section.   If approved, the approval must be documented in the client's record. |
| | J. The following individuals may act as designees to the Medical Director for purposes of this subpart. |
| |    &bull; Moose Lake – In addition to the Medical Director, the evaluation of whether the protective isolation may be continued and written approval may also be provided by the  Assistant Facility Director, Security Director,  or a Program Manager. |
| |    &bull; St. Peter – In addition to the Medical Director, the evaluation of whether the protective isolation may be continued and written approval may also be provided by the Assistant Facility Director, Facility Security Director or Program Manager. |
| | K. MSOP will maintain a separate appendix on file with  the Licensing Division specifying the current names of individuals assigned to positions identified in item J of this section. |
| | L. If it is determined by the Licensing Division that the review completed by a designee of the Medical Director did not comply with Minnesota Rules, part 9515.3090 the Licensing Division may rescind that individual's authority to approve such recommendations. |
| | M. Each week the program's Protective Isolation Review Panel shall review the documentation concerning clients who have been placed in protective isolation or remain in protective isolation since the last weekly review.   The program's Protective Isolation Review Panel shall discontinue protective |

32

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIRMENTS |
|---|---|
| | isolation if the documentation does not provide evidence that the criteria required under Minnesota Rules, part 9515.3090, subpart 4 to initiate or continue protective isolation was met.<br><br>N.  The license holder must clearly document when protective isolation is discontinued, but the placement in the high security area is continued.<br><br>O.  MSOP must have a policy and procedure to address situations in which the license holder has determined that protective isolation is to be discontinued and the client refuses to leave the high security area.  The policy and procedures must include what steps the license holder will take to transition the client from the high security area. |

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| **Subp. 5. Request for review of protective isolation.**<br><br>The license holder must provide to a person in treatment who is placed in protective isolation a procedure which can be used immediately to request a review if the person believes the placement was unwarranted. Protective isolation may be imposed pending the outcome of the review. The review request procedure must include the elements in items A to D.<br><br>A. The review must be conducted by a panel of at least three persons, who were not participants in the decision to impose the isolation, and whose professional experience and training qualify them to assess the situation.<br><br>B. The review must be conducted and the outcome determined within seven days of being requested, excluding Saturdays, Sundays, and legal holidays, unless the review panel states in writing why a determination cannot be made within seven days and specifies when a determination will be made.<br><br>C. The person requesting the review must have the opportunity to present to the review panel evidence and argument to explain why protective isolation is unwarranted. The review panel may reasonably limit the form by which the evidence and argument are presented if necessary to ensure the physical safety of the review participants.<br><br>~~D. A person may request that the chief officer of the facility review a determination of the review panel. The chief officer's decision is final.~~ | Variance #12 to Minnesota Rules, part 9515.3090, subpart 5, item D.<br><br>A. A client who is placed in protective isolation may request a review by the Protective Isolation Review Panel if the client believes the placement was not warranted. The review panel must review the client's placement on a weekly basis as long as a client remains in protective isolation. These reviews occur regardless of the client's request. The review will include whether protective isolation will be continued or be terminated. If is continued, the panel will determine whether the protective isolation plan will be modified.<br><br>B. The client must have the opportunity to present evidence to the review panel and to explain why he or she believes that the placement in protective isolation is unwarranted. The review panel may reasonably limit the forum by which the evidence is presented if necessary to ensure the physical safety of the review participants.<br><br>C. The review of the use of protective isolation must be conducted and the outcome determined within seven days of protective isolation being initiated, excluding Saturdays, Sundays, and legal holidays, unless the review panel states in writing why a determination cannot be made within seven days and specifies when a determination will be made. The determination made by the protective isolation review panel must be documented on the protective isolation review form and maintained in the client record.<br><br>D. MSOP may designate the Moose Lake Facility Director to review and make a final decision of any appeals to the determination of the Protective Isolation Review Panel at Moose Lake.<br><br>E. MSOP may designate the St. Peter Facility Director to review and make a final decision of any appeals to the determination of the Protective Isolation Review Panel at St. Peter.<br><br>F. MSOP will maintain a separate appendix on file with the Licensing Division specifying the current names of individuals assigned to positions identified in items D and E who are designated to make final determinations concerning appeals of the use of protective isolation, under this section. |

34

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| | G. MSOP must have a policy and procedure, including related forms for the use of protective isolation. The policy and procedure must comply with Rule 26 and this variance and be dated. The forms must clearly document the reason protective isolation was initiated, what less restrictive actions were attempted by staff to address the situation, and a summary of the incident reports that lead to protective isolation being required. The policy and procedure must be approved by the MSOP Executive Director or designee. |

35

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIRMENTS |
|---|---|
| **9515.3100 ADMINISTRATIVE RECORDS.**<br><br>**Subpart 1. Staff records.**<br><br>The license holder must maintain personnel records on all staff. The staff records must include the following information:<br><br>A. documentation that a background study has been done as required by Minnesota Statutes, section 245A.04, subdivision 3;<br><br>B. documentation of a staff person's education and experience, including current licensure, certification, or registration when required by a person's position; and<br><br>C. documentation of staff orientation and training. The record must include the date orientation or training was completed, the topics covered, and the hours of training received. | No variance requested. |
| **Subp. 2. General administrative records.**<br><br>The license holder must maintain the following administrative records and make the records available to the commissioner for inspection:<br><br>A. a directory of all persons in the treatment program;<br><br>B. a copy of the facility's licenses from the commissioner and the commissioner of health;<br><br>C. a copy of the purchase of service contracts and subcontracts with a consultant and other individuals who provide services in the residential program, but who are not under the direct control of the license holder; and<br><br>D. a copy of the facility's quality improvement plan, including reports that monitor and evaluate current activities. | No variance requested. |
| **9515.3110 RECORDS OF PERSONS IN TREATMENT.**<br><br>**Subpart 1. Central record file on premises.**<br><br>The license holder must maintain a central file of persons' records on the program premises. | **Variance #13 to Minnesota Rules, part 9515.3110, subpart 1.**<br><br>A. All treatment records of current clients for the preceding 12 month period must be maintained on-site and must be readily accessible and continuously available to authorized MSOP personnel. |

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIRMENTS |
|---|---|
| | B. All clinical records and chart notes must be maintained in the client record and must be available in the client record within seven (7) calendar days of completion. |
| | C. All treatment records stored in an off-site location must be stored in the same area of a leased building. |
| | D. All records must be protected from loss, tampering, defacement, or use by unauthorized persons and must be maintained and used in accordance with all applicable regulations governing data practices. |
| | E. All records stored off-site must be secured and readily accessible and continuously available to authorized MSOP personnel. |

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIRMENTS |
|---|---|
| **Subp. 2. Admission record.** | Variance #14 to Minnesota Rules, part 9515.3110, subpart 2, items A and F. |
| Each person's admission record must include: | |
| A. the person's name, date of birth, and social security number; | A. The client's social security numbers will be collected and available to those with security access, but will not be included in the client's record. |
| B. a photograph taken at admission; | |
| C. the date of admission; | B. The names of victims identified as requiring or requesting protection from the client or notification of the client's release or change of status will not be place in the client record but will be maintained in a secure administrative file. |
| D. the name, address, and telephone number of an individual to contact in case of an emergency; | |
| E. documentation that the person's legal or medical status meets admission criteria; | |
| F. names of victims identified as requiring or requesting protection from the person or notification of the person's release or change of status; and | |
| G. names and telephone numbers of the person's attorney, county case manager, and any other individual warranted by the person's legal or medical status. | |
| **Subp. 3. Treatment records.** | No variance requested. |
| The license holder must document the course of evaluation and treatment for each person in treatment. In addition to any other documentation the license holder chooses to include, each person's record must contain: | |
| A. copies of the person's diagnostic assessment, individual treatment plan, progress notes, quarterly evaluation, and discharge plan; | |
| B. names of the person's medical providers; | |
| C. documentation of incidents or emergencies involving the person; | |
| D. copies of any State Review Board reports on the person; and | |
| E. a copy of the person's transfer and discharge summary when applicable. | |

38

| RULE PART (RULE 26) REQUIREMENTS | VARIANCE REQUIREMENTS |
|---|---|
| **Subp. 4. Consent to release information in record.**<br><br>The license holder shall not release information in a persons's record without a written consent signed by the person that specifies:<br><br>~~A. the date of authorization and length of time, not to exceed six months from the date of the person's signature, for which the consent is valid;~~<br><br>B. the information that will be released;<br><br>C. the purpose for releasing the information; and<br><br>D. the name of the individual or organization authorized to receive the information. | **Variance #15** to Minnesota Rules, part 9515.3110, subpart 4, item A.<br><br>A.  The client's consent to authorize the release of information is in writing and maintained in the client's record.<br><br>B.  The consent to release information shall be valid for no more than 365 calendar days from the date of signature and must comply with Minnesota Statutes, section 13.05 subdivision 4, paragraph (d). |
| **Subp. 5. Secure confidential file.**<br><br>Confidential information that is not to be released to a person must be kept separate from the person's medical record in a secure confidential file. The file must be accessible to staff 24 hours a day. | No variance requested. |

39

**APPROVAL FROM THE LICENSING DIVISION IS REQUIRED PRIOR TO
ANY CHANGE OR MODIFICATION TO THE ABOVE VARIANCES**

The license holder must obtain approval from the Licensing Division prior to any changes or modifications to the conditions set forth in the variance request. Any amendments to this variance must be in writing.

Failure to comply with the conditions or failure to obtain prior approval for changes to the variance may result in revocation of the variance and may be cause for other sanctions under sections 245A.06 and 245A.07.

**LICENSING RESERVES THE RIGHT TO RESCIND
OR CANCEL A VARIANCE AT ANY TIME**

The Licensing Division may rescind or cancel any variance granted in this request at any time, with or without cause, upon written notice to the license holder.

The decision to grant, deny, or rescind a variance request is final and not subject to appeal under Minnesota Statutes, chapter 14.

The license holder is responsible to comply with all requirements of the variance as of effective date unless there is explicit written agreement with the Director of the Licensing Division to the contrary, or the variance specifies a date the requirement is otherwise effective. Except as expressly approved in the variance, the provider must comply with all requirements of Minnesota Rules, parts 9515.3000 to 9515.3110.

| Variance Expiration Date:  N/A | Type of Variance:  Continuous |
|---|---|
| Name and title of the person accepting the terms of the variance:<br><br>Nancy Johnston, Executive Director MSOP<br><br>Signature: | Date:<br>1-10-14 |
| Name and title of the person approving the variance request:<br><br>Laura Plummer Zrust, Director, Licensing Division<br><br>Signature: | Date:<br>1/27/14 |

40